UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HOBBY LOBBY STORES, INC.,

      Plaintiff,

-v-

CHRISTIE'S INC. and JOHN DOE #1,

      Defendants.

Case No. 20-CV-2239

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY THIS ACTION AND COMPEL ARBITRATION**

Andrew M. Lankler
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 408-2516
Fax: (212) 259-2516
andrew.lankler@bakerbotts.com

*Attorneys for Defendant Christie's Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................2

    I.    Factual Background ................................................................................................ 2

    II.   Procedural Background........................................................................................... 4

APPLICABLE LAW ................................................................................................................4

ARGUMENT............................................................................................................................6

    I.    The singular meaning of the Sale Agreement's arbitration exception dictates that Hobby Lobby's claims belong in arbitration. ...................................................... 6

    II.   Even under Hobby Lobby's illogically broad construction of the arbitration exception, arbitration should still be compelled because this Court should exercise its discretion not to consolidate this action with the *in rem* action........................................ 11

CONCLUSION......................................................................................................................13

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)..................................................................................................5, 10

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003)..............................................................................................5

*Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*,
    173 F.3d 909 (3d Cir. 1999) ............................................................................................10

*Cole v. Schenley Indus., Inc.*,
    563 F.2d 35 (2d Cir. 1977)..............................................................................................10

*In re Refco Inc., Sec. Litig.*,
    No. 07-MDL 1902 (JSR), 2009 WL 10666107 (S.D.N.Y. Nov. 20, 2009).......................5

*Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*,
    806 F. Supp. 17 (E.D.N.Y. 1992) ...................................................................................11

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)..........................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).........................................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983)..........................................................................................................4, 5

*Net2Globe Intern., Inc. v. Time Warner Telecom of N.Y.*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003)..............................................................................9

*United States v. One Cuneiform Tablet Known as the 'Gilgamesh Dream Tablet'*,
    Civil Docket No. 20-2222 (E.D.N.Y.) .......................................................................4, 12

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989).........................................................................................................5

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .........................................................................1, 4, 5

National Stolen Property Act, 18 U.S.C. § 2314 ..........................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 14 ................................................................................................................................8

Fed. R. Civ. P. 19 ................................................................................................................................8

Fed. R. Civ. P. 20 ................................................................................................................................8

Fed. R. Civ. P. 42 ...........................................................................................................................9, 10

N.Y. C.P.L.R. § 601 ............................................................................................................................8

N.Y. C.P.L.R. § 1001 ..........................................................................................................................8

N.Y. C.P.L.R. § 1002 ..........................................................................................................................8

N.Y. C.P.L.R. § 1007 ..........................................................................................................................8

Defendant Christie's Inc. ("Christie's") respectfully submits this memorandum of law in support of its motion to stay this action and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

## PRELIMINARY STATEMENT

Christie's and Hobby Lobby Stores, Inc. ("Hobby Lobby") are sophisticated commercial parties, each of which regularly drafts and enters into contracts governing the terms of its business transactions. In the contract that gives rise to Hobby Lobby's claims in this action—a 2014 sale agreement whereby Hobby Lobby purchased a historical artifact consigned to Christie's by its seller—the parties agreed, as is routine for each, to mediate and arbitrate any claim or dispute related to the contract rather than proceed in any courtroom. That agreement to arbitrate allows an exception: one party may bring its contract claim against another in a court proceeding only if a third-party's related lawsuit is one to which the aggrieved party's claim "could be joined."

Because of the strong federal policy favoring arbitration, through which courts are guided to interpret even ambiguous arbitration provisions and their exceptions in favor of compelling arbitration, Hobby Lobby must explain how the relevant arbitration exception clearly and unambiguously embraces the claims it raises here and admits of no reading that excludes them. But it cannot, because the clearest reading of that exception—one that gives effect to all its parts—places this action outside the exception and into arbitration.

Hobby Lobby's claims cannot be "joined" to any third-party lawsuit, such that they are brought under the umbrella of that lawsuit, because no applicable procedural rules allow such joinder. These claims, at best, might be administratively linked to a third-party lawsuit in which Hobby Lobby is a claimant. But that linkage cannot satisfy the arbitration exception's meaning of "join," because that reading would impermissibly create surplus contract language and would

look improperly to an inherently administrative rule to supply a jurisdictional foundation, affecting the parties' substantive and procedural rights.

Christie's' reading of the arbitration exception is indeed the sounder, but it need not be to meet the federal test, which heavily favors arbitrability and interprets contractual arbitration provisions and their exceptions in favor of arbitration in all but the clearest cases where those exceptions unambiguously apply. The language at issue does make out such a case; if there is one, unambiguous reading of the contract, it is the one Christie's offers to the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Factual Background

Pursuant to a private sale agreement dated July 14, 2014 (the "Sale Agreement"), Hobby Lobby agreed to purchase the Gilgamesh Dream Tablet (the "Tablet"), an ancient Mesopotamian cuneiform tablet bearing part of the *Epic of Gilgamesh* that was consigned to Christie's in late 2013. Complaint, ECF No. 1 ("Compl."), ¶ 1. As alleged in the Complaint, the Tablet's U.S. presence prior to being consigned to Christie's was as follows: (i) in 2003, the Tablet was purchased by an "American Dealer" and "imported . . . into the United States"; (ii) in February 2007, the American Dealer sold the Tablet to a pair of buyers and subsequently provided those buyers with a "fictitious provenance that the Tablet had been part of an auction sale on August 20, 1981 at Butterfield and Butterfield, San Francisco ('Butterfield's'), lot number 1503 (the 'Butterfield's Provenance')"; (iii) later in 2007, the pair of buyers "sold or consigned the Tablet to Michael Sharpe Rare and Antiquarian Books in Pasadena, California ('Michael Sharpe') using the Butterfield's Provenance"; and (iv) in 2013, an "intermediate owner" sold the Tablet to a "John Doe #1," who ultimately consigned it to Christie's. *Id.* at ¶¶ 17-20.

Before selling the Tablet to Hobby Lobby, Christie's performed due diligence on the Tablet to verify its provenance; that due diligence confirmed that the Tablet had been sold at a U.S.-based auction in 1981. Compl. ¶ 26. Pre-purchase, Christie's provided Hobby Lobby with a private sale catalogue setting forth the Tablet's provenance, as Christie's understood it at the time:

> **Provenance**
> Butterfield and Butterfield, San Francisco, 20 August 1981, lot 1503.
> with Michael Sharpe Rare and Antiquarian Books, Pasadena, California

*Id.* at ¶ 23. Christie's also provided Hobby Lobby with copies of the Butterfield's and Michael Sharpe catalogues. *Id.* at ¶ 26.

On July 14, 2014, Hobby Lobby purchased the Tablet for $1,694,000 from consignor John Doe #1 in a private sale. Compl. ¶ 1. Christie's, as the consignor's agent, and Hobby Lobby executed the Sale Agreement, which sets forth terms governing the sale of the Tablet. *See* Declaration of Andrew M. Lankler ("Lankler Decl."), Exhibit A. In that agreement, the consignor warranted, among other things, that he was the owner of the Tablet and had the right to transfer ownership of the Tablet. *Id.* at ¶ 2. The Sale Agreement also contains a mandatory mediation/arbitration provision:

> Before either of us starts any court proceedings (except in the limited circumstances where the dispute, controversy or claim is related to a lawsuit brought by a third party and this dispute could be joined to that proceeding) we shall consent to the mediation of any dispute following the mediation procedure of JAMS with a mediator affiliated with JAMS and mutually acceptable to each of us.

*Id.* at ¶ 12. If any such dispute is not settled by mediation within 60 days, it shall be "referred to and finally resolved by arbitration in New York in accordance with the International Arbitration Rules for the International Center for Dispute Resolution." *Id*.

3

## II.     Procedural Background

In September 2019, the Department of Homeland Security seized the Tablet from Hobby's Lobby's Washington, D.C.-based Museum of the Bible. Compl. ¶ 33. On May 18, 2020, the federal government filed an *in rem* action, in which Hobby Lobby has appeared as a claimant, alleging the provenance of the Tablet was false and that the Tablet had, in fact, been stolen from Iraq and illegally imported into the United States in 2003 in violation of the National Stolen Property Act, 18 U.S.C. § 2314. *See United States v. One Cuneiform Tablet Known as the 'Gilgamesh Dream Tablet',* Civil Docket No. 20-2222 (E.D.N.Y.) (the "*in rem* action"). The following day, Hobby Lobby filed this action, alleging claims of fraud and breach of express and implied warranty under the New York Uniform Commercial Code, and seeking to recoup the purchase price of the Tablet. Compl. ¶¶ 39-63.

On July 8, 2020, Christie's submitted a letter to the Court seeking a conference regarding its anticipated motions to compel arbitration and dismiss. ECF No. 10. Hobby Lobby responded to that letter on July 15, 2020, ECF No. 12; Christie's replied on July 22, 2020. ECF No. 14. At a telephonic conference on July 28, 2020, the Court determined that it would receive briefing on, and resolve, the motion to compel arbitration before considering the motion to dismiss.[1]

## **APPLICABLE LAW**

By this motion, Christie's seeks an order pursuant to 9 U.S.C. § 3 staying this action and compelling arbitration. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), creates a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, arbitration agreements "shall be valid,

---

[1] Pursuant to the Court's instruction, Christie's limits this motion to the issue of the compelled arbitration of Hobby Lobby's claims. As set forth in Christie's pre-motion letter correspondence, and as represented to the Court by counsel for Christie's at the pre-motion conference, Christie's has dismissal arguments—other than those related to its motion to compel arbitration—that it will reserve until such time as the Court resolves this motion and directs additional briefing on the motion to dismiss.

4

irrevocable, and enforceable." 9 U.S.C. § 2. Any doubt as to the scope of arbitrability will be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("An order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

This strong federal presumption in favor of arbitrability trumps state law canons of contract interpretation. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) ("[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA] . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." (internal citation omitted)); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003) (observing that "[t]he analysis differs from ordinary contract interpretation" because of the strong presumption favoring arbitration); *In re Refco Inc., Sec. Litig.*, No. 07-MDL 1902 (JSR), 2009 WL 10666107, at *14 (S.D.N.Y. Nov. 20, 2009), report and recommendation adopted sub nom. 2010 WL 11500548 (S.D.N.Y. Jan. 21, 2010) ("Where the scope of an agreement to arbitrate is at issue, the FAA's policy in favor of arbitration overrides the general rule of contract interpretation cited by plaintiffs [that ambiguities are to be construed against the drafter].") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Hobby Lobby does not dispute that the Sale Agreement contains a valid and enforceable arbitration clause. Rather, Hobby Lobby contends that this dispute falls into the narrow exception to the parties' arbitration clause. ECF No. 12. To overcome the federal presumption in

5

favor of arbitration, the exception's language must unambiguously apply to Hobby Lobby's claims, and with no other plausible contract interpretation yielding a different result. Instead, the only valid reading of the plain language in the limited carve-out means that Hobby Lobby's claims are not included, and this matter must therefore be stayed and directed to arbitration.

## ARGUMENT

### I.   The singular meaning of the Sale Agreement's arbitration exception dictates that Hobby Lobby's claims belong in arbitration.

When Christie's and Hobby Lobby entered into the 2014 Sale Agreement, whereby Christie's facilitated the sale of the Tablet to Hobby Lobby via consignment, the parties knowingly consented to terms requiring that they mediate and arbitrate claims or disputes that might arise from the sale. A limited exception allows these claims to be brought and resolved in a court proceeding, rather than before an arbitrator, only when they may be heard in a proceeding initiated by a non-party and which is related to such claims. Now, despite its knowing agreement to arbitrate the claims it brings in this action, Hobby Lobby seeks to circumvent the Sale Agreement for its own convenience, asking this Court to endorse an illogical reading of that agreement that would render part of its language meaningless. But the Sale Agreement's plain language admits of only one result: because Hobby Lobby cannot join the claims it raises here to those in a third-party suit, it must submit these claims to mediation and arbitration.

The Sale Agreement makes mediation and, failing that, arbitration of claims mandatory, "except in the limited circumstances where the dispute, controversy or claim is related to a lawsuit brought by a third party and this dispute could be joined to that proceeding." Lankler Decl. Ex. A ¶ 12. Two distinct conditions must therefore be met for a claim arising from the Sale Agreement to properly appear in state or federal court: (1) a "related" third-party lawsuit must have been filed, and (2) the Sale Agreement party's claim must be one that may be "joined to

6

that proceeding." The arbitration provision thus balances efficiency and fairness: When courtroom procedure allows a third-party lawsuit to entangle all parties to a Sale Agreement dispute, the Sale Agreement parties will sideline their agreement to arbitrate and proceed under the umbrella of the third-party's action; when the Sale Agreement claim cannot be joined—i.e., when court rules do not allow the Sale Agreement claim to be heard under the umbrella of the third-party action—the default mediation and arbitration provision will remain in force.

Hobby Lobby's claims here do not fall within the Sale Agreement's arbitration exception because they cannot be "joined" to the *in rem* action, under any reasonable interpretation of the Sale Agreement's use of "joined."

First, by requiring that a claim be one that "could be joined" to a third-party lawsuit, the Sale Agreement invokes the notion of procedural rules in *some* legal forum. Whether one party's grievance "could" be merged with those in another party's lawsuit can naturally and only be a question of procedure. And the procedural rules in state and federal courts throughout the United States extensively address issues of joinder—when claims and parties can be combined with those existing claims and parties in an already-filed lawsuit. There is good reason, then, to find that the Sale Agreement's requirement of a "claim" that "could be joined" to a "lawsuit" is calling into operation court procedural rules generally and that the use of "join" more specifically identifies the relevant rules as being those that prescribe when one party's claims may be brought together with another party's claims under the banner of a single "lawsuit."

Second, in seeking any specific bodies of procedural law that the parties might have contemplated as being applicable to the exception, the Sale Agreement itself provides evidence: The agreement identifies New York state law as governing its terms and New York County's state and federal courts as having jurisdiction over arbitrability issues. Lankler Decl. Ex. A ¶ 12.

New York state and federal courts' rules of civil procedure, then, may inform the meaning of the exception and the parties' understanding of when a Sale Agreement claim would be joinable to a related third-party lawsuit. In New York federal courts, Federal Rule of Civil Procedure 14 explains the conditions under which a named defendant "may bring in a third party." Federal Rules of Civil Procedure 18 through 20 provide for the joinder of claims and parties. Together, these rules explain when and how one party may introduce claims it has against another party under the banner of a third-party's lawsuit. Near-verbatim or analogous procedural rules exist in New York. *See* N.Y. C.P.L.R. § 1007 (third-party practice rule analogous to Federal Rule 14); N.Y. C.P.L.R. § 601 (joinder of claims against an adverse party within single proceeding); N.Y. C.P.L.R. § 1001 (required joinder of parties similar to Federal Rule 19); N.Y. C.P.L.R. § 1002 (permissive joinder of parties similar to Federal Rule 20). Among the array of circumstances where New York's state and federal courts allow one party to carry claims it has against another party into a third-party action, none applies to Hobby Lobby or the claims it would bring here.

Third, even if the procedural rules of state and federal courts in New York do not apply to resolve the parties' meaning when they created an arbitration exception that requires a claim to be joinable to a third-party lawsuit, then the Sale Agreement language can, at the least, be construed as invoking the procedural rules of any forum where a third-party lawsuit is filed. This reading of the exception means that its application will vary dependent on the forum where a third-party lawsuit is filed and that specific forum's procedural rules. But nothing prohibits the Sale Agreement parties from having agreed to such a condition. Here, the *in rem* action filed in this Court is the basis for Hobby Lobby's claim of a related third-party lawsuit. But this Court's procedural rules do not allow Hobby Lobby's claims against Christie's to be brought jointly alongside the claims within the government's lawsuit.

Hobby Lobby asks this Court to read the Sale Agreement's use of "join" in its arbitration exception to require only that a claim be one that may be consolidated with a third-party action for docket management purposes and within a trial court's discretion. But that reading would collapse the arbitration exception's first requirement, relatedness, with its second, joinability to a third-party lawsuit. Federal Rule of Civil Procedure 42 allows federal courts to consolidate actions that "involve a common question of law or fact." If the Sale Agreement drafters intended joinability to be satisfied by the administrative association of two, still-distinct lawsuits in contemplation of this federal rule, they would have had no need of the additional condition that the claim be "related" to a third-party lawsuit. Rule 42's precondition that consolidated matters have common questions of law *or* fact means that the rule will be available to a trial court wherever matters are related. This reading of the Sale Agreement generates surplus by treating *any* related matter as one that "could be joined" to a third-party action and is thus averse to New York principles of contract interpretation. *Net2Globe Intern., Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003) ("It is axiomatic under New York law that courts interpret a contract so as to give effect to all of its provisions and cannot and should not accept an interpretation that . . . renders certain terms inoperable." (internal citation omitted)).

For another reason, this Court should not conclude that Rule 42 consolidation is sufficient to show that Hobby Lobby's claim may be "joined" with the *in rem* action. The Court may consolidate or otherwise overlap matters for hearings or trials "if *actions before the court* involve a common question of law or fact." Fed. R. Civ. P. 42(a) (emphasis added). The Rule thus presupposes two matters ripe for consolidation are already properly before the Court—i.e., that each has its own, free-standing jurisdictional basis. Rule 42 does not and should not confer the basis for the Court's jurisdiction; it concerns the ability of trial courts to efficiently manage their

9

dockets and should not affect the substantive or procedural rights of the parties. *See Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir. 1977) (acknowledging that Rule 42 "is a procedural device designed to promote judicial economy, [which] . . . does not change the rights of the parties in the separate suits" and finding that a court "must therefore consider the jurisdictional basis of each complaint separately"); *Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 913 (3d Cir. 1999) (finding that "consolidation order did not result in the joinder of the defendants" in one action to another, such that "each action retained its own separate identity" and the "District Court should have analyzed the jurisdictional basis of each action independently"). Hobby Lobby would look to this administrative rule as the *entire basis* for its action to be in federal court in the first instance, since absent this consolidation, Hobby Lobby would have no conceivable ground on which to dub its claims "joined" with the *in rem* action.

The Sale Agreement's terms, which can only be sensibly read to allow a party's agreement-related claim to appear in this or any Court if it is brought inside the context of a third party's related lawsuit, mean that Hobby Lobby's claims must be arbitrated. Hobby Lobby cannot point to any sound contract interpretation that gives an alternate meaning to the arbitration exception's requirement that a claim "could be joined" to a third-party lawsuit. And even if it could, this would at most provide a dubious, competing reading, and certainly not the sort of "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" that federal courts and the FAA require. *AT&T Tech., Inc.*, 475 U.S. at 650. The Court should therefore stay this action pending arbitration.

**II.      Even under Hobby Lobby's illogically broad construction of the arbitration exception, arbitration should still be compelled because this Court should exercise its discretion not to consolidate this action with the *in rem* action.**

Even assuming the Sale Agreement's arbitration exception applies to claims that can merely be consolidated with related third-party proceedings, this Court should elect not to consolidate Hobby Lobby's claims against Christie's with the *in rem* action, since such consolidation will not yield any benefit for the Court and will risk prejudice to the parties. Trial courts have broad discretion to consolidate related cases where there is a common question of law or fact to avoid unnecessary costs or delay. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Consolidation is primarily used to achieve judicial economy and to prevent separate actions from producing conflicting results. *Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 806 F. Supp. 17, 22 (E.D.N.Y. 1992). However, discretion to consolidate is "not unfettered" and the Court must consider:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Johnson*, 899 F.2d at 1285.

None of these factors weigh in favor of consolidation here. First, this Court can and should conclude that consolidation is inappropriate because absent consolidation, the dispute between Hobby Lobby and Christie's would necessarily and properly proceed to mediation and arbitration, rather than to another state or federal court. This would, in turn, free up judicial resources and eliminate the burden of this case on the Court entirely. Additionally, placing this matter in arbitration alleviates the costs and burden placed on the United States Attorney's Office and on Christie's to wade through additional litigation issues (and for Christie's or any party

11

against whom it seeks indemnity to appear in federal court at all). Only Hobby Lobby would see a benefit from consolidation. Last, there is no risk of inconsistent adjudication here, as the *in rem* action asks the Court only to decide whether the Tablet was illegally imported. The arbitrator in this action will decide entirely distinct and much more granular fraud and contract issues, which would serve only to complicate the issues and slow the progress of the *in rem* action if kept in federal court.

The lack of any economy—for the judiciary or for any parties apart from Hobby Lobby—is only compounded by the confusion that will stem from consolidating cases with differing, complex legal issues and the prejudice that would result. Although the actions undeniably share certain basic factual allegations, Hobby Lobby's claims against Christie's arise from issues purely tangential to the *in rem* action and irrelevant to its resolution. Simply put, the *in rem* action will focus on the Tablet's alleged illegal importation into the United States, while this action will focus on warranties and representations that were made as part of the parties' Sale Agreement. Whether Christie's knew of any issues with the Tablet's provenance and what representations, if any, Christie's made about that provenance to Hobby Lobby—the questions at the heart of Hobby Lobby's action—are of no moment to resolving the *in rem* action, which concerns only the importation of the Tablet; indeed, the *in rem* action may be resolved through the Government's anticipated motion for summary judgment on a 2003 importation of the Tablet, in which Christie's had no role. *See* Civil Docket No. 20-2222, Initial Conference Hr'g Tr., July 24, 2020. Consolidating this case with the *in rem* action would create no efficiency for the Court and would instead only serve the confuse the issues, unnecessarily delay the judicial proceedings, and prejudice the parties.

## **CONCLUSION**

For the foregoing reasons, the Court should stay this action and compel Hobby Lobby to arbitrate its claims against Christie's.

Dated: August 18, 2020
       New York, New York

                                        BAKER BOTTS L.L.P.

                                        */s/ Andrew M. Lankler*
                                        Andrew M. Lankler

                                        *Attorneys for Defendant Christie's Inc.*