UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

HOBBY LOBBY STORES, INC.,

        *Plaintiff*,

-against-

CHRISTIE'S, INC., et al.,

        *Defendants*.

Civil Action No. 20-cv-02239 (AMD)

# DEFENDANT JOSEPH DAVID HACKMEY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

PRYOR CASHMAN LLP
  William L. Charron
  wcharron@pryorcashman.com
  Haley C. Sylvester
  hsylvester@pryorcashman.com
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant*
*Joseph David Hackmey*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

    Background ..................................................................................................................... 1

    Plaintiff Alleges No Basis To Equitably Toll Its Claims Against Hackmey ................. 2

    Plaintiff's Novel "Agency" Theory Is Baseless ............................................................. 3

RELEVANT ALLEGATIONS ............................................................................................ 4

    Christie's Delivery Of The Tablet To Plaintiff
    Under The Buyer's PSA In September 2014 ................................................................. 4

    Plaintiff's Allegations Concerning The Tablet's Provenance ....................................... 4

    Plaintiff's Allegations Concerning Hackmey's Consignment Of
    The Tablet And Christie's Diligence Into The Tablet's Provenance ............................ 5

    Plaintiff's Allegations Concerning Only Christie's Post-Sale Conduct ....................... 6

    There Is No Support For Plaintiff's New Agency Theory ............................................ 7

ARGUMENT ........................................................................................................................ 7

    I.   PLAINTIFF'S CLAIMS AGAINST HACKMEY ARE TIME-BARRED ............ 7

    II.  PLAINTIFF'S CLAIMS ARE NOT EQUITABLY TOLLED .............................. 9

        A.  Plaintiff Fails To Allege Any Basis For The Court To Apply Equitable Tolling ........... 9

           1.  Plaintiff's Speculative Alternative Allegations Are
              Not Actionable Under Fed. R. Civ. P. 8(a) And 9(b) ........................................ 10

           2.  Plaintiff Alleges No Post-Sale Misconduct By Hackmey ................................ 11

           3.  Plaintiff Is Not Entitled To Keep Hackmey In
              This Case In The Hope Of Finding Discovery That
              Might Support A Basis To Equitably Toll Its Claims ....................................... 12

        B.  Plaintiff's Novel Agency Theory Does Not Provide A
           Basis To Equitably Toll Its Claims Against Hackmey ............................................. 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 10, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 11

*De Sole v. Knoedler Gallery, LLC*,
   137 F. Supp. 3d 387 (S.D.N.Y. 2015) ........................................................................ 8, 9, 11

*Doss, Inc. v. Christie's Inc.*,
   No. 08 Civ. 10577 (LAP), 2009 WL 3053713 (S.D.N.Y. Sept. 23, 2009) ................................ 9

*Fertitta v. Knoedler Gallery, LLC*,
   No. 14-CV-2259 (JPO), 2015 WL 374968 (S.D.N.Y. Jan. 29, 2015) ........................ 8, 9, 11, 12

*National Grp. For Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
   420 F. Supp. 2d 253 (S.D.N.Y. 2006) ................................................................................ 10

*In re Premier Container Corp.*,
   95 Misc. 2d 859 (Sup. Ct., Queens Cty. 1978) ..................................................................... 13

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman*,
   38 A.D.3d 325 (1st Dep't 2007) ......................................................................................... 10

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ............................................................................................... 11

*Willensky v. Lederman*,
   No. 13-CV-7026 (KMK), 2015 WL 327843 (S.D.N.Y. Jan. 23, 2015) ..................................... 8

*Zaretsky v. William Goldberg Diamond Corp.*,
   No. 14 Civ. 1113 (SAS), 2014 WL 4160232 (S.D.N.Y. Aug. 18, 2014) .................................. 9

**RULES & STATUTES**

Fed. R. Civ. P. 8(a) ............................................................................................................... 10

Fed. R. Civ. P. 9(b) ..................................................................................................... 10, 11, 13

| **RULES & STATUTES** | **PAGE(s)** |
|---|---|
| Fed. R. Civ. P. 11(b)(3) | 13 |
| Fed. R. Civ. P. 12(b)(6) | 1 |
| NYUCC § 2-312(1)(a) | 7 |
| NYUCC § 2-314(2) | 7 |
| NYUCC § 2-313 | 8 |
| NYUCC § 2-725(1) | 8, 9 |
| NYUCC § 2-725(2) | 8, 9 |

Defendant Joseph David Hackmey ("Hackmey"), by and through his undersigned counsel, respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims against him brought by plaintiff Hobby Lobby Stores, Inc. ("Plaintiff") in its First Amended Complaint dated February 1, 2021 ("FAC").

## PRELIMINARY STATEMENT

Plaintiff's breach of warranty claims against Hackmey are all time-barred and should be dismissed. Plaintiff has pleaded no basis for its claims against Hackmey to be tolled.

## Background

This case concerns Plaintiff's purchase of an ancient Mesopotamian cuneiform tablet bearing part of the *Epic of Gilgamesh*, c. 1600 BC (the "Tablet"), which is alleged to have been stolen from Iraq and imported illegally to the United States in 2003. Plaintiff alleges that it bought the Tablet on July 30, 2014 and took delivery of the Tablet in September 2014, pursuant to a private sale agreement (the "Buyer's PSA") with co-defendant Christie's Inc. ("Christie's"). Christie's is alleged to have sold the Tablet on behalf of Hackmey, who is alleged to have been the consignor (and an intermediate owner).

Plaintiff alleges that the warranties of good title and importation that accompanied the Tablet at the time of the Buyer's PSA in 2014 were inaccurate when made and thus actionable under various provisions of New York's version of the Uniform Commercial Code (the "NYUCC"). Accepting Plaintiff's allegations as true solely for purposes of this motion, Plaintiff's time to sue Hackmey for breaches of warranties under the NYUCC expired in September 2018, four years after Plaintiff took delivery of the Tablet. Plaintiff's claims against Hackmey are time-barred.

**Plaintiff Alleges No Basis To Equitably Toll Its Claims Against Hackmey**

During the pre-motion conference with the Court on April 19, 2021, Plaintiff acknowledged that its claims against Hackmey are time-barred unless the doctrine of equitable tolling were to apply. (4/19/21 Pre-Mot. Conf. ("PMC") Tr. at 3.) Plaintiff, however, does not allege any plausible, non-speculative basis to equitably toll its claims.

Equitable tolling applies when a defendant has, through its post-sale conduct, fraudulently misled or lulled a plaintiff into not suing within the limitations period. Plaintiff alleges no such fraudulent activity by Hackmey. Plaintiff alleges fraudulent pre-sale and, more significantly, post-sale activity *only* by Christie's, and Plaintiff's fraudulent inducement claim is alleged *only* against Christie's based upon Christie's allegedly independent misrepresentations to Plaintiff about the Tablet's provenance. Plaintiff does not allege the same by Hackmey. On the contrary, Plaintiff alleges at one point that "Christie's failed to disclose [the reported provenance's] falsity to Hackmey," and that *Hackmey was also* "misled by Christie's into believing that the [reported] Provenance was accurate …." (FAC (ECF No. 25) at ¶ 27.) While Hackmey has no reason to believe the truth of Plaintiff's allegations concerning Christie's, even crediting those allegations purely for purposes of this motion, they are directed independently at Christie's.

Plaintiff's contention that it should be permitted an opportunity to take discovery to determine "whether" Hackmey may have conspired with Christie's after the Tablet's sale to mislead Plaintiff, and thus whether Plaintiff may have some basis to assert equitable tolling against Hackmey, is meritless and has the rules of litigation backwards. (*See* PMC Tr. at 10 ("I think we are entitled to develop those facts in discovery to see whether it's, you know, a case of equitable tolling ….").) Plaintiffs are required to state viable claims in good faith – and, in the case of fraud

and equitable tolling, with particularity at the outset. Plaintiffs are not permitted to use discovery to search for possible claims, as Plaintiff proposes here.

**Plaintiff's Novel "Agency" Theory Is Baseless**

During the pre-motion conference, Plaintiff announced a new theory, not apparent on the face of its pleading (and inconsistent with its pleading), that Christie's allegedly fraudulent post-sale conduct should be deemed imputed to Hackmey under the doctrine of agency for purposes of equitably tolling Plaintiff's claims against Hackmey. Plaintiff acknowledged to the Court at the time that it was aware of no law to support its theory. (*Id.* at Tr. 12.)

Plaintiff's proposed predicate for its new argument – a draft, unsigned, purportedly "standard auction consignment agreement" from Christie's – does not support Plaintiff's position, either. Even if the Court were to consider that extraneous document, it makes clear that Christie's post-sale rescission rights would be independent of its consignor and taken if Christie's were to "reasonably decide," on its own, to rescind a previously sold item. (ECF No. 30-2 at ¶ 15.) Christie's unilateral post-sale rights under that document would be inconsistent with the role of an agent who must take its directions from its principal. Furthermore, the document now relied upon by Plaintiff expressly states that Christie's role as an "exclusive agent" would only extend past a sale "for 60 days after the auction … if any lot is unsold at auction, …." (*Id.* at ¶ 14(a).) Such potential continuing, post-sale agency is not alleged by Plaintiff to be at issue here.[1]

Accordingly, because Plaintiff's breach of warranty claims against Hackmey are not equitably tolled, the FAC, as against Hackmey, should be dismissed.

---

[1] Hackmey understands that Christie's has produced its actual consignment agreement with Hackmey (the "Seller's PSA") to Plaintiff in discovery. Plaintiff is thus specifically aware that Christie's agency on behalf of Hackmey ended after the Tablet was sold. The Seller's PSA expressly states that Hackmey "appoint[ed Christie's] as [his] exclusive agent to sell the [Tablet] during the Term," where the "Term" is expressly defined to have expired on "July 31, 2014" – *i.e.*, the day after Plaintiff wired its payment for the Tablet. The Seller's PSA also states that Christie's post-sale rescission rights and conduct are to be exercised independently of Hackmey based upon whatever Christie's alone may "decide" to do.

## RELEVANT ALLEGATIONS

### Christie's Delivery Of The Tablet To Plaintiff Under The Buyer's PSA In September 2014

Plaintiff alleges that it entered into the Buyer's PSA with Christie's, as agent for Hackmey (as consignor of the Tablet), on or about July 14, 2014. (FAC (ECF No. 25) at ¶ 1.) Plaintiff alleges that it wired the purchase price of $1,674,000 for the Tablet to Christie's on July 30, 2014, and that "[i]n September 2014, [Christie's International Head of Books] personally delivered the Tablet to [Plaintiff] from New York to Oklahoma City by plane." (*Id.* at ¶¶ 23, 30, 33.)

### Plaintiff's Allegations Concerning The Tablet's Provenance

Plaintiff alleges that "the Tablet was first seen on the international art market by a dealer in the United States (the 'American Dealer') in 2001 while the Tablet was in the possession of a Jordanian antiquities dealer in London." (*Id.* at ¶ 17.) Plaintiff alleges that "the American Dealer purchased the Tablet in London and imported it into the United States" in 2003. (*Id.* at ¶¶ 17, 38.) Plaintiff alleges that the Tablet had been stolen from Iraq and that its importation to the U.S. by the American Dealer was illegal. (*Id.* at ¶ 38.)

In 2007, according to Plaintiff, the American Dealer sold and provided "a fictitious provenance" for the Tablet "to a pair of buyers." (*Id.* at ¶ 18.) That pair of buyers allegedly sold or consigned the Tablet in 2007 to a rare books dealer in California, who allegedly published a catalogue that included the Tablet and its allegedly fictitious provenance. (*Id.* at ¶ 19.) Hackmey, "a private art collector who resides in Tel Aviv, Israel," is alleged to have "purchased the Tablet prior to the fall of 2013 from an intermediate owner." (*Id.* at ¶¶ 6, 20.)

**Plaintiff's Allegations Concerning Hackmey's Consignment Of
The Tablet And Christie's Diligence Into The Tablet's Provenance**

Plaintiff alleges that "Hackmey consigned the Tablet to Christie's in London for sale in the fall of 2013." (*Id.* at ¶ 21.) According to the FAC, at some point thereafter "a Christie's London employee" sent an email to the American Dealer "inquiring about the Tablet's provenance." (*Id.* at ¶ 25.) Plaintiff alleges that "Christie's Head of Antiquities in London … had received a phone call from the American Dealer in December 2013 in response to [Christie's earlier email]." (*Id.*) Plaintiff alleges that, during this call, the American Dealer "did not answer" Christie's specific questions about the Tablet's provenance but supposedly confessed to Christie's that the Tablet's reported provenance – which the American Dealer had allegedly falsified – "could not be verified and would not hold up to scrutiny." (*Id.*) Plaintiff alleges that Christie's "asked the American Dealer no further questions about the Tablet." (*Id.*)

Plaintiff alleges that, following the alleged confession by the American Dealer, "Christie's decided against placing the Tablet in a public auction but proceeded to offer the Tablet to [Plaintiff] in a private sale," despite allegedly knowing by that point that the Tablet's reported provenance was false. (*Id.* at ¶ 26.) Plaintiff further alleges:

> Hackmey either (i) knew that the [reported provenance] was false and was complicit with Christie's in offering the Tablet for sale to [Plaintiff] with a false provenance or (ii) was misled by Christie's into believing that the [reported provenance] was accurate because Christie's failed to disclose its falsity to Hackmey …. [*Id.* at ¶ 27.]

Plaintiff alleges that, "[p]rior to consummating" its purchase of the Tablet under the Buyer's PSA, it "asked Christie's to provide it with all the information and documents Christie's possessed to support the provenance" of the Tablet. (*Id.* at ¶ 28.) According to the FAC, Christie's responded by telling Plaintiff that the Tablet's reported provenance had been "confirmed to Christie's". (*Id.*) According to the FAC, "Christie's deliberately withheld from [Plaintiff]" the

5

name of the American Dealer and facts from and concerning the American Dealer that would have revealed the Tablet's reported provenance to have been false. (*Id.*)

Plaintiff alleges that, in or about July 2014, Christie's imported the Tablet to New York from London "and presented [Plaintiff] with [the Buyer's PSA] for the purchase." (*Id.* at ¶ 29.) Plaintiff alleges that the Buyer's PSA includes a section captioned "Seller's Warranties," which warrants that the Seller (*i.e.*, Hackmey):

a. is the owner of the [Tablet] …;

b. has the right to transfer ownership of the [Tablet] to [Plaintiff] without any restrictions or claims by anyone else; and

c. at the time of the handing over the [Tablet] to [Christie's], has met all requirements relating to exporting or importing the [Tablet] and is not aware that anyone else has failed to meet these requirements. [*Id.* at ¶ 31.]

Plaintiff alleges that "[n]one of the Seller's Warranties could be made honestly given the information possessed by Christie's in its capacity as the Seller's agent." (*Id.* at ¶ 32.)

**Plaintiff's Allegations Concerning Only Christie's Post-Sale Conduct**

Plaintiff alleges that, in 2017, it "asked Christie's to reaffirm the [allegedly fictitious provenance]" of the Tablet. (*Id.* at ¶ 34.) According to the FAC, "representatives of Christie's Antiquities Department in London" made additional false representations and concealments about the Tablet's provenance to Plaintiff, "thereby compounding the fraud and breach of warranty and depriving [Plaintiff] of the opportunity to discover the fraud." (*Id.* at ¶ 35.) Plaintiff does *not* allege that Hackmey had any involvement in any of these alleged post-sale activities by Christie's.

Plaintiff further alleges that "Christie's fraudulent sale of the Tablet was not an isolated incident," claiming that Christie's sold Plaintiff a looted work in 2011, and that "Christie's, upon information and belief, has sold a number of stolen objects to other purchasers using provenances that contained either false or unverified information or omitted key pieces of information, …." (*Id.*

6

at ¶ 36.) Plaintiff does not allege that Hackmey had any involvement in any of those other allegedly fraudulent transactions.

**There Is No Support For Plaintiff's New Agency Theory**

During the April 19, 2021 pre-motion conference, Plaintiff argued that the Court should draw certain "inferences" from a purportedly "standard auction consignment agreement" from Christie's, which is not part of Plaintiff's pleading, and which Plaintiff contends supports an argument that Christie's allegedly fraudulent post-sale conduct should be imputed to Hackmey under the doctrine of agency. (ECF No. 30 at p.1 & ECF No. 30-2; PMC at Tr. 6-7, 11.) Even if the Court elects to consider Plaintiff's proffered document, Hackmey should still prevail because Plaintiff's novel agency theory is entirely unsupported.

Plaintiff cannot genuinely contend that Christie's was required to take its post-sale direction from Hackmey, or even in consultation with Hackmey. It is apparent on the face of the so-called "standard auction consignment agreement" belatedly offered by Plaintiff that Christie's is not required to take its post-sale directions concerning prior sale cancellations from its consignors. That document makes clear that Christie's would have the right to rescind a sale if it "reasonably decide[d]," on its own, to cancel a sale due to, *inter alia*, a problem with the property's title. (ECF No. 30-2 at ¶ 15.) That document also makes clear that Christie's would continue to act as an "exclusive agent" for a consignor after a sale only "if any lot is unsold at auction," and only for another "60 days after the auction to sell the lot privately …." (*Id.* at ¶ 14(a).)

## ARGUMENT

**I.  PLAINTIFF'S CLAIMS AGAINST HACKMEY ARE TIME-BARRED**

Plaintiff asserts three claims against Hackmey: breach of warranty of title under NYUCC § 2-312(1)(a); breach of implied warranty of merchantability under NYUCC § 2-314(2); and

breach of express warranty under NYUCC § 2-313.  (FAC at ¶¶ 43-61.)  Each of these NYUCC warranty claims is time-barred on the face of the FAC.  *See, e.g.*, *Willensky v. Lederman*, No. 13-CV-7026 (KMK), 2015 WL 327843, at *4 (S.D.N.Y. Jan. 23, 2015) ("[A]lthough '[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]' a statute of limitations defense may be 'raise[d] … in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.'") (citations omitted).

"A breach of warranty claim is governed by the New York Uniform Commercial Code's [] four-year statute of limitations" under NYUCC § 2-725(1).  *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259 (JPO), 2015 WL 374968, at *8 (S.D.N.Y. Jan. 29, 2015) (citations omitted); *accord De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 421 (S.D.N.Y. 2015).  Under § 2-725(1), "an action for breach of warranty must be brought within four years of the date the cause of action accrues."  *De Sole*, 137 F. Supp. 3d at 421 (citation omitted).  "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of such breach."  NYUCC § 2-725(2).  "A breach of warranty occurs when tender of delivery is made, …."  *Id.*

Therefore, each of Plaintiff's breach of warranty claims under the NYUCC accrued against Hackmey when delivery of the Tablet was made to Plaintiff, regardless of Plaintiff's alleged lack of knowledge at that point that any warranty concerning the Tablet's title or rightful transfer had been breached.  Plaintiff alleges that the Tablet was "personally delivered" to it in Oklahoma City in September 2014.  (FAC at ¶ 33.)  Plaintiff was thus required to bring its breach of warranty claims against Hackmey within four years of September 2014:  *i.e.*, by no later than September 2018.  Plaintiff did not sue Hackmey until February 2021 (and it did not sue Christie's or any "Doe" defendant until May 2020).  (ECF Nos. 1, 25.)  Accordingly, each of Plaintiff's NYUCC breach of warranty claims against Hackmey is time-barred unless the limitations period is tolled.  Plaintiff

8

conceded this point during the April 19, 2021 pre-motion conference, and further represented that its only tolling theory is that of equitable tolling. (PMC at Tr. 3.)[2]

## II. PLAINTIFF'S CLAIMS ARE NOT EQUITABLY TOLLED

"Under New York's equitable tolling doctrine, a defendant is estopped from pleading a statute of limitations defense if the 'plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Fertitta*, 2015 WL 374968, at *8 (citations omitted). "'For equitable tolling to apply, plaintiff must show that the defendant wrongfully concealed its actions, such that plaintiff was unable, despite due diligence, to discover facts that would allow him to bring his claim in a timely manner, or that defendant's actions induced plaintiff to refrain from commencing a timely action.'" *De Sole*, 137 F. Supp. 3d at 423 (citations omitted).

### A. Plaintiff Fails To Allege Any Basis For The Court To Apply Equitable Tolling

Plaintiff does not allege any fraud, misrepresentation or intentional deception *by Hackmey* that was made to prevent Plaintiff from timely filing suit. Plaintiff's allegations of intentional wrongdoing are directed at Christie's only; indeed, Plaintiff alleges that Hackmey himself may have been misled by Christie's. (FAC at ¶¶ 25-27.)

Plaintiff alleges that Christie's conducted independent diligence into the Tablet's provenance, that Christie's learned of the American Dealer, that Christie's learned from the American Dealer that the Tablet's reported provenance was "fictitious," and that Christie's concealed its information from Plaintiff while misrepresenting that the reported provenance had been "confirmed to Christie's." (*Id.*) On the basis of these alleged facts concerning Christie's activities (none of which Hackmey has any reason to believe is actually true), Plaintiff alleges a

---

[2] Plaintiff agrees that the tolling provision of NYUCC § 2-725(2) does not apply. *See, e.g.*, *Doss, Inc. v. Christie's Inc.*, No. 08 Civ. 10577 (LAP), 2009 WL 3053713, at *3 (S.D.N.Y. Sept. 23, 2009); *Zaretsky v. William Goldberg Diamond Corp.*, No. 14 Civ. 1113 (SAS), 2014 WL 4160232, at *2-3 (S.D.N.Y. Aug. 18, 2014).

9

fraudulent inducement claim against Christie's *but not* against Hackmey. (FAC at ¶¶ 62-68.) Because Plaintiff does not allege any deception by Hackmey, equitable tolling cannot extend Plaintiff's breach of warranty claims against Hackmey as a matter of law. *See, e.g.*, *Shared Commc'ns Servs. of ESR, Inc. v. Goldman*, 38 A.D.3d 325, 325-26 (1st Dep't 2007) ("Plaintiff has not shown that it was 'actively misled' *by defendant*," "that *defendant was responsible* for the alleged [concealment]…," or that plaintiff "was prevented from timely filing an action due to reasonable reliance by it on 'deception, fraud or misrepresentation' *by defendant*") (citations omitted) (emphases supplied).

    **1.**    **Plaintiff's Speculative Alternative Allegations Are Not Actionable Under Fed. R. Civ. P. 8(a) And 9(b)**

While Plaintiff alternatively alleges that Hackmey may have been "complicit with Christie's in offering the Tablet for sale to [Plaintiff] with a false provenance," (FAC at ¶ 27), that allegation is both unduly speculative and inconsistent with Plaintiff's immediately subsequent allegation that Hackmey "was misled by Christie's into believing that the [Tablet's reported provenance] was accurate because Christie's failed to disclose its falsity to Hackmey …." (*Id.*) Plaintiff's surmise about 'possible' scenarios is non-actionable under Rule 8(a) as a matter of law. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'") (citations omitted).

Likewise, as a matter of law under Rule 9(b), Plaintiff is not entitled to fraud-based equitable tolling based upon its speculative and factually inconsistent allegations. *See, e.g.*, *National Grp. For Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265

(S.D.N.Y. 2006) ("In exceptional circumstances, equitable tolling doctrines such as the doctrine of fraudulent concealment may provide some relief …. Plaintiff must plead each of these [fraudulent concealment] elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.") (citations omitted).  Nor has Plaintiff plausibly alleged the requisite "strong inference of fraudulent intent" by Hackmey where Plaintiff has itself offered the inference that Hackmey was misled by Christie's.  *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (explaining that Fed. R. Civ. P. 9(b) is intended, *inter alia*, "to safeguard a defendant's reputation from improvident charges of wrongdoing") (citation & quotations omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007) ("[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'") (citations omitted).

### 2. Plaintiff Alleges No Post-Sale Misconduct By Hackmey

Even if the Court were to consider Plaintiff's alternative speculation that Hackmey may have been "complicit with Christie's *in offering* the Tablet for sale to [Plaintiff] with a false provenance," that alleged *pre-sale* conduct would not provide a basis to apply equitable tolling. Equitable tolling must be based on a "later," *post-sale* fraudulent deception that was made "'for the purpose of concealing the former tort.'" *Fertitta*, 2015 WL 374968, at *8 (citations omitted); *accord De Sole*, 137 F. Supp. 3d at 423-24 ("To benefit from the equitable tolling doctrine under New York law, a '"plaintiff[] [must] establish that subsequent and specific actions [were taken by defendants, *separate from those that provide the factual basis for the underlying cause of action*, and that these subsequent actions] by defendants somehow kept [plaintiff] from timely bringing suit."'") (citations omitted) (emphasis supplied).

Plaintiff does not allege any post-sale activity by Hackmey designed to conceal an allegedly fraudulent, earlier sale made upon false warranties. Plaintiff alleges that Christie's, not Hackmey, made later fraudulent "reaffirmations" concerning the Tablet's provenance to Plaintiff that somehow "depriv[ed Plaintiff] of the opportunity to discover the fraud." (FAC at ¶¶ 34-35.) Plaintiff does not allege that Hackmey knew about or had any involvement in those later allegedly fraudulent statements by Christie's, or that Hackmey did anything else to allegedly lull Plaintiff into inaction. Particularly where Plaintiff has sued only Christie's, not Hackmey, for fraud, Plaintiff's allegations about Christie's allegedly fraudulent post-sale conduct provide no basis or "strong inference of fraudulent intent" to equitably estop *Hackmey* from moving to dismiss Plaintiff's breach of warranty claims as time-barred. The following language from *Fertitta*, which involved the sale of inauthentic art, is instructive:

> Plaintiffs first argue that several of Kraft's acts after the sale constitute fraudulent concealment [sufficient to equitably toll a breach of warranty claim]. First, they argue that because *Wick* continued to claim that the Painting was authentic after the sale and offered to sell other fraudulent paintings to [plaintiff], *Kraft* fraudulently concealed the cause of action. Even if Wick's acts constituted fraudulent concealment, and <u>even if it were true that Wick was Kraft's undisclosed principal, there is no plausible allegation that Wick's statements are actually chargeable to Kraft</u>.

2015 WL 374968, at *8 (italics in original; underscoring supplied).

### 3. Plaintiff Is Not Entitled To Keep Hackmey In This Case In The Hope Of Finding Discovery That Might Support A Basis To Equitably Toll Its Claims

During the pre-motion conference stage, Plaintiff asserted that it "is entitled to discover[y] concerning *whether* Christie's [allegedly] deceitful acts … should be imputed to Hackmey for the purpose of equitably tolling the statute of limitations … against Hackmey." (ECF No. 30 at 1 (emphasis supplied); *accord* PMC at Tr. 10.) This is not how the law works.

To "unlock the doors of discovery," Plaintiff must come to the Court "armed with [] more than conclusions" and surmise. *Iqbal*, 556 U.S. at 678-79. Plaintiff is required to satisfy the pleading requirement of Rule 9(b) with particularized facts, pleaded in good faith, at the outset. *Id.* at 686-87. Plaintiff has fallen far short of that standard with respect to Hackmey.

B. **Plaintiff's Novel Agency Theory Does Not Provide A Basis To Equitably Toll Its Claims Against Hackmey**

Also during the pre-motion conference stage, Plaintiff advanced a theory that it did not plead in its FAC, contending that its allegations of post-sale misconduct directed at Christie's should be deemed imputed to Hackmey under the doctrine of agency. (ECF No. 30 at 2; PMC at Tr. 6-7.) This position is baseless.

For one thing, Plaintiff admitted to the Court that it knew of no authority to support its claim that Hackmey remained Christie's "perpetual principal" after the Tablet's sale. (PMC at Tr. 12.) That is because there is no such law. On the contrary, the law has been long-established in New York that an auctioneer's agency role is "ordinarily at an end when the sale is completed and the purchase price collected; …." *In re Premier Container Corp.*, 95 Misc. 2d 859, 866 (Sup. Ct., Queens Cty. 1978) (citations omitted). As a matter of law, Christie's role as Hackmey's agent ended in July 2014.[3]

During the pre-motion conference, Plaintiff directed the Court to a purportedly "standard auction consignment agreement" from Christie's. (ECF No. 30-2.) Even if the Court were to consider such a document, the relevant paragraph cited by Plaintiff (paragraph 15) makes clear that Christie's would act independently of its consignor in addressing a possible sale cancellation based upon whatever "we [Christie's] reasonably decide." (*Id.* at ¶ 15(a).) Furthermore, if Christie's were to decide to cancel a prior sale (according to this document), then its consignor

---

[3] Plaintiff knows this is true as a matter of fact, too, pursuant to the Seller's PSA. *See* Fed. R. Civ. P. 11(b)(3).

13

"must repay" his sales proceeds back to Christie's "when we ask you to do so." (*Id.* at ¶ 15(b).) Nothing in that document supports Plaintiff's position that Christie's post-sale conduct could only be at the instruction of, and in consultation with, its consignors as perpetual principals; the post-sale arrangement is that Christie's consignors "must" abide whatever Christie's decides.

The extraneous document relied upon by Plaintiff also makes clear that any post-sale, continuing agency by Christie's for a purported "standard" consignor would only be for a period of 60 additional days and only in the event that the consignor's lot did not sell at auction, such that Christie's might have an opportunity to sell the lot through a private sale. (*Id.* at ¶ 14(a).)

Accordingly, Plaintiff's theory of a perpetual agency, or an agency that extended beyond the sale of the Tablet to Plaintiff, is factually and legally baseless and not grounds to apply equitable tolling. Because none of Plaintiff's breach of warranty claims against Hackmey is equitably tolled, the FAC as against Hackmey should be dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, defendant Joseph David Hackmey respectfully requests that the Court dismiss all of Plaintiff's claims as against him, and that the Court award Hackmey such other and further relief as deemed just and proper.

Dated: New York, New York
      May 10, 2021                        PRYOR CASHMAN LLP

By: _____
    William L. Charron
    wcharron@pryorcashman.com
    Haley C. Sylvester
    hsylvester@pryorcashman.com
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant Joseph David Hackmey*