UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HOBBY LOBBY STORES, INC.,

      *Plaintiff*,

-against-

CHRISTIE'S, INC., et al.,

      *Defendants*.

Civil Action No. 20-cv-02239 (AMD)

# DEFENDANT JOSEPH DAVID HACKMEY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

PRYOR CASHMAN LLP
   William L. Charron
   wcharron@pryorcashman.com
   Haley C. Sylvester
   hsylvester@pryorcashman.com
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant
Joseph David Hackmey*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

Plaintiff's Newly Proposed Fraud Claim Fails To Allege That
Hackmey Proximately Caused Plaintiff To Purchase The Tablet In 2014 ...................... 1

Plaintiff's Newly Proposed Equitable Tolling Theory Against Hackmey Is Invalid ...... 3

RELEVANT PROPOSED NEW SAC ALLEGATIONS .................................................. 4

    Plaintiff's Proposed Allegations Concerning Christie's Independent Pre-Sale Conduct ........... 4

    Plaintiff's Proposed Allegations Concerning Christie's Post-Sale Conduct .............. 5

ARGUMENT ....................................................................................................................... 6

    I.    THE FAC AS AGAINST HACKMEY SHOULD BE DISMISSED .............................. 6

    II.    PLAINTIFF'S PROPOSED FRAUD CLAIM AGAINST HACKMEY IS FUTILE ...... 6

    III.    PLAINTIFF'S PROPOSED NEW EQUITABLE TOLLING
         ALLEGATIONS AGAINST HACKMEY ARE INVALID AND IMPLAUSIBLE ....... 7

        A.    Plaintiff's Proposed New Allegations Do Not Satisfy Rule 9(b) ............................. 7

        B.    Plaintiff's Allegations Concerning Apparent Authority Are Futile ......................... 8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                                     **PAGE(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................7, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................7

*Cyber Media Grp., Inc. v. Island Mortgage Network, Inc.*,
   183 F. Supp. 2d 559 (E.D.N.Y. 2002) ...................................................................................6

*Fertitta v. Knoedler Gallery, LLC*,
   No. 14-CV-2259 (JPO), 2015 WL 374968 (S.D.N.Y. Jan. 29, 2015) ......................................8

*Herbert Constr. Co. v. Continental Ins. Co.*,
   931 F.2d 989 (2d Cir. 1991) ...................................................................................................9

*Holmes v. Allstate Corp.*,
   No. 11 Civ. 1543 (LTS) (DCF), 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) ..........................9

*JGB Enter., Inc. v. Beta Fluid Sys., Inc.*,
   135 F. Supp. 3d 18 (N.D.N.Y. 2015) ......................................................................................6

*Laub v. Faessel*,
   297 A.D.2d 28 (1st Dep't 2002) .............................................................................................6

*Muscletech Research and Dev., Inc. v. East Cost Ingredients, LLC*,
   No. 00-CV-0753A(F), 2004 WL 941815 (W.D.N.Y. Mar. 25, 2004) .....................................9

*National Grp. For Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
   420 F. Supp. 2d 253 (S.D.N.Y. 2006) ....................................................................................7

*O'Hara v. Bayliner*,
   89 N.Y.2d 636 (1997) .............................................................................................................9

*In re Premier Container Corp.*,
   95 Misc. 2d 859 (Sup. Ct., Queens Cty. 1978) .......................................................................8

*Spagnola v. Chubb*,
   264 F.R.D. 76 (S.D.N.Y. 2010) ..............................................................................................9

**RULES**

Fed. R. Civ. P. 4(A) ......................................................................................................................1

Fed. R. Civ. P. 9 ...........................................................................................................................7

| **RULEES** | **PAGE(s)** |
|---|---|
| Fed. R. Civ. P. 9(b) | 7, 9 |
| Fed. R. Civ. P. 15 | 7 |

Defendant Joseph David Hackmey ("Hackmey") respectfully submits this reply memorandum of law in further support of his motion to dismiss plaintiff Hobby Lobby Stores, Inc.'s ("Plaintiff") First Amended Complaint dated February 1, 2021 ("FAC").[1]

**PRELIMINARY STATEMENT**

Plaintiff all but admits that its FAC fails to assert any viable and timely claims against Hackmey. In particular, as previously explained by Hackmey (without any real opposition from Plaintiff), the FAC fails to allege that Hackmey made any post-sale, intentional misrepresentations to Plaintiff concerning the Tablet's title, and thus Plaintiff does not plausibly allege that it was lulled *by Hackmey* into not bringing its breach of warranty claims within the four-year limitations period. Plaintiff's allegations of intentional wrongdoing in the FAC are directed solely against co-defendant Christie's. The FAC, as against Hackmey, should be dismissed.

Plaintiff nonetheless arrogates the 'right' (without seeking leave under this Court's Rule 4(A)) to further amend its pleading as against Hackmey based upon discovery it has apparently conducted in the interim *with no notice to*, or opportunity to participate by, Hackmey. Plaintiff expresses its belief that its proposed "Second Amended Complaint" ("SAC"), based on the unilateral discovery that Plaintiff has cherry-picked for the Court's review, is invulnerable to challenge and thus "moots" Hackmey's (otherwise meritorious) motion to dismiss. (ECF No. 34 at 2.) Putting aside Plaintiff's clear procedural improprieties, Plaintiff is mistaken that its proposed SAC would state viable claims against Hackmey.

**Plaintiff's Newly Proposed Fraud Claim Fails To Allege That**
**Hackmey Proximately Caused Plaintiff To Purchase The Tablet In 2014**

Plaintiff now proposes to assert a fraud claim against Hackmey based upon his allegedly breached pre-sale representations and warranties concerning the Tablet's title. But Plaintiff also

---

[1] Additional defined terms have the meanings ascribed in Hackmey's initial brief dated May 10, 2021. (ECF No. 33.)

1

expressly alleges an intervening proximate cause of its alleged harm: namely, that *Christie's* was "required" to, and did, *"independently"* research the Tablet's title "through a source *other than* [Hackmey]," was "unable to verify" Hackmey's information through its own diligence, was "unable to satisfy *its* internal minimal standards to offer an object of Iraqi antiquity for sale," and nonetheless "prepared" the "Private Sale Catalogue" describing the Tablet and sold the Tablet to Plaintiff – who purchased the Tablet on the basis of *Christie's own* alleged mis-description. (ECF No. 34-6 at ¶¶ 25-32 (emphases supplied).) Plaintiff further alleges Christie's independent diligence to be the "gold standard" of provenance representation and the reason that Plaintiff "had no basis to question the accuracy of the provenance," and why it "proceeded to reach agreement … to purchase the Tablet, …." (*Id.* at ¶¶ 16, 35.)

Plaintiff's proposed new allegations separate Christie's from Hackmey with respect to the relevant issue of how the Tablet's provenance was represented. The allegedly "independent" acts by Christie's with respect to the Tablet's provenance are the proximate cause of Plaintiff's alleged harm. While Plaintiff alleges that Christie's engaged in such misconduct "[w]ith Hackmey's knowledge and approval" at the time, (*id.* at ¶ 32), Plaintiff also makes clear that Christie's acted according to its own standards and authority, and that Hackmey's alleged "implied authority" for Christie's to make pre-sale representations and warranties was a necessary but not sufficient condition to cause Plaintiff to purchase the Tablet. (*Id.* at ¶ 46.)

Accordingly, because Plaintiff – even after having a free-hand at discovery without Hackmey's involvement – has not alleged anything more than transactional causation by Hackmey, and has failed to allege a basis to establish proximate or loss causation by Hackmey, Plaintiff's proposed new fraud claim as against Hackmey would be futile. Again, Hackmey's motion to dismiss should be granted.

2

**Plaintiff's Newly Proposed Equitable Tolling Theory Against Hackmey Is Invalid**

Plaintiff effectively concedes that Christie's actual agency role with respect to Hackmey ended in 2014, following Plaintiff's wiring of funds to purchase the Tablet. Plaintiff nonetheless now argues that it "believed and expected" that Christie's remained Hackmey's agent after the Tablet's sale, presumably indefinitely, and that Christie's continued to have "apparent" agency with respect to Hackmey in 2017, when it allegedly made further misrepresentations to Plaintiff about the Tablet's provenance. (ECF No. 34 at 14-15.) On the basis of such alleged "apparent authority," Plaintiff renews its argument that Christie's alleged post-sale misrepresentations should be imputed to Hackmey for purposes of equitable tolling. (*Id.*) This argument still fails.

For one thing, apparent authority plays no role in the equitable tolling analysis, and Plaintiff offers no authority to the contrary. Plaintiff does not, and cannot, allege that Christie's *was, in fact,* Hackmey's agent in 2017, or that Hackmey *in fact* directed Christie's to allegedly mislead Plaintiff at that time.

Furthermore, Plaintiff's conclusory allegations of "apparent authority" are themselves inadequate. Even after the benefit of its own discovery, Plaintiff does not allege that Hackmey did anything to actually signal to Plaintiff that Christie's spoke for him in 2017. Plaintiff merely alleges, conclusorily, that it "expected" Hackmey to have remained Christie's principal at that point because of Plaintiff's now-alleged understanding of its post-sale cancellation rights. But even that allegation is implausible given Plaintiff's admitted sophistication and awareness of Christie's so-called "standard" practices, in which Christie's acts independently of its consignors after a sale of an object has closed. Hackmey's motion to dismiss should be granted, with prejudice.

## RELEVANT PROPOSED NEW SAC ALLEGATIONS

**Plaintiff's Proposed Allegations Concerning Christie's Independent Pre-Sale Conduct**

Plaintiff now proposes to allege in the SAC:

> As of 2014, Christie's employees were required to follow certain internal due diligence procedures applicable to investigating the provenance of antiquities such as the Tablet…. Upon information and belief, the procedures also required that the provenance be independently verified, i.e., through a source other than an owner or previous owner, …. Christie's was required to establish the Tablet's provenance through independent sources dating back to at least 1990.

(ECF No. 34-6 at ¶ 25.) Plaintiff would also continue to allege that "the sale by Christie's of an antiquity represents a 'gold standard' of certification that an object is legally owned and may be offered for sale on the international market." (*Id.* at ¶ 16; *accord* ECF No. 25 at ¶ 14.)

Plaintiff is aware of Christie's independent diligence standards and activities through its alleged status as an "active" collector of antiquities like the Tablet, and as a repeat client of Christie's. (*Id.* at ¶¶ 15, 34, 52.) Evidencing such awareness, at the pre-motion stage, Plaintiff *sua sponte* provided the Court with a so-called "standard auction consignment agreement" from Christie's that Plaintiff had. (ECF No. 30-2.)

Plaintiff would further allege in the proposed SAC that "Christie's quickly learned[] there were multiple problems with the Tablet's provenance as stated in the False Provenance Statement" provided by Hackmey, and that "Christie's was unable to satisfy its internal minimal standards …." (ECF No. 34-6 at ¶ 26.) Plaintiff would then allege that "Christie's was not only unable to confirm the statements in the False Provenance Statement through independent sources, it was also unable to verify them …." (*Id.* at ¶ 27.) Plaintiff would add: "Christie's nonetheless proceeded to offer the Tablet for sale with a false and incomplete provenance which [Christie's], in at least one internal communication about the Tablet's provenance, admitted was 'thin.'" (*Id.* at ¶ 28.) Plaintiff would allege that it "had no basis to question the accuracy of that provenance" because it

4

had been represented *by Christie's*, and that Plaintiff "proceeded to reach agreement … to purchase the Tablet" as a result. (*Id.* at ¶¶ 15, 16, 35.)

Plaintiff also proposes to allege that, "[d]uring this [pre-sale] period, [Christie's] communicated with Hackmey multiple times concerning the Tablet's alleged provenance and, upon information and belief, kept Hackmey informed about Christie's due diligence steps and efforts to sell the Tablet." (*Id.* at ¶ 31.) Plaintiff would additionally allege that, "[w]ith Hackmey's knowledge and approval, Christie's prepared … a private sale catalogue for potential purchasers …." (*Id.* at ¶ 32.)

**<u>Plaintiff's Proposed Allegations Concerning Christie's Post-Sale Conduct</u>**

Plaintiff continues to allege it "asked Christie's to reaffirm the Butterfield Provenance" in 2017. (ECF No. 34-6 at ¶ 45.) Plaintiff would also allege: "[a]t no time did Hobby Lobby receive notice of any termination by Hackmey of Christie's authority to engage in such activities." (*Id.*)

Plaintiff maintains that "Christie's" provided it with "incomplete documentation concerning the Tablet's provenance," including an e-mail saying: "'Please be reassured that we did all our due diligence to confirm a clear line of owners and provenance, and that *we ourselves*, including our Legal team, were satisfied.'" (*Id.* at ¶¶ 47, 49 (emphasis supplied).)

Plaintiff now also proposes to allege, conclusorily, that "Christie's acted in the interest of Hackmey, its principal, to protect his sale and prevent its cancellation" when Christie's allegedly misled Plaintiff in 2017. (*Id.* at ¶ 50.) Plaintiff would further allege that it "accepted Christie's reassurances, understanding and expecting them to have been made on Hackmey's behalf …." (*Id.* at ¶ 51.) Nowhere does Plaintiff propose to allege that Hackmey actually was Christie's principal in 2017, or that Hackmey made any representations to Plaintiff in 2017.

5

# ARGUMENT

## I. THE FAC AS AGAINST HACKMEY SHOULD BE DISMISSED

Plaintiff offers no real opposition to Hackmey's motion to dismiss the FAC. Plaintiff responds that its proposed SAC "moots" Hackmey's motion to dismiss the FAC. (ECF No. 34 at 2.) In making that assertion, Plaintiff impliedly concedes that the FAC lacks basis to equitably toll Plaintiff's breach of warranty claims as against Hackmey. Accordingly, Hackmey's motion to dismiss the FAC should be granted.

## II. PLAINTIFF'S PROPOSED FRAUD CLAIM AGAINST HACKMEY IS FUTILE

"In order to make a common law fraud claim under New York law, a plaintiff must establish that the misrepresentation was the proximate cause of the injury suffered." *JGB Enter., Inc. v. Beta Fluid Sys., Inc.*, 135 F. Supp. 3d 18, 31 (N.D.N.Y. 2015) (citing *Cyber Media Grp., Inc. v. Island Mortgage Network, Inc.*, 183 F. Supp. 2d 559, 581 (E.D.N.Y. 2002). "To establish causation, plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)." *Laub v. Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002) (citations omitted). "Loss causation is the fundamental core of the common-law concept of proximate cause …." *Id.* (citations omitted).

Plaintiff's proposed SAC would allege transaction causation with respect to Hackmey (*i.e.*, that Hackmey's alleged conduct in placing the Tablet into commerce through Christie's induced Plaintiff to buy it), but the proposed SAC does *not* allege loss causation, or proximate cause, by Hackmey. Instead, the proposed SAC alleges in detail that *Christie's* independent and intervening diligence into the Tablet's provenance, "through a source *other than* [Hackmey]," is what caused Plaintiff to actually have enough comfort to buy the Tablet. (ECF No. 34-6 at ¶¶ 15-16, 25-35

(emphasis supplied).) Regardless of Plaintiff's allegation that Hackmey "impliedly authorized" Christie's to make representations about the Tablet's provenance as part of the PSA, Plaintiff alleges that it was, in fact, *Christie's* "gold standard" independent diligence and imprimatur into the Tablet's provenance – not Hackmey's unverified offered provenance – that actually caused Plaintiff to make the purchase. (*Id.* at ¶¶ 15, 16, 35, 46.) *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007) ("[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.") (citations & quotations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Therefore, Plaintiff's newly-proposed fraud claim against Hackmey would be invalid and futile under Fed. R. Civ. P. 15 and 9 because Plaintiff has not proposed to plead facts that would establish proximate cause by Hackmey. Hackmey's motion to dismiss should be granted.

### III. PLAINTIFF'S PROPOSED NEW EQUITABLE TOLLING ALLEGATIONS AGAINST HACKMEY ARE INVALID AND IMPLAUSIBLE

Plaintiff now contends that its post-sale cancellation right "would require Christie's to continue to act as Hackmey's agent" in 2017. (ECF No. 34 at 14 n.15.) In support, Plaintiff proposes to allege, conclusorily, that Christie's alleged post-sale misrepresentations "may … be imputed to Hackmey" under the doctrine of "apparent authority." (ECF No. 34-6 at ¶ 90; ECF No. 34 at 14.) Plaintiff's proposed new allegations and legal position are baseless and would be futile.

#### A. Plaintiff's Proposed New Allegations Do Not Satisfy Rule 9(b)

As previously explained, a theory of equitable tolling must be pleaded with particularity under Rule 9(b), must not be speculative, and must be plausible. *E.g.*, *National Grp. For Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006).

7

Plaintiff's proposed allegation that "it reasonably understood and expected" that Christie's spoke to Plaintiff in 2017 with authority from Hackmey is not supported by anything other than Plaintiff's own alleged state of mind. (ECF No. 34-6 at ¶ 90; ECF No. 34 at 14.) Even after taking unilateral discovery, Plaintiff proposes no particularized *facts* that would support a reasonable inference that Hackmey *actually* authorized (let alone directed) Christie's to say anything to Plaintiff in 2017, or that Hackmey was *actually* Christie's principal at the time. Critically, Plaintiff does *not* allege that an actual agency existed between Christie's and Hackmey in 2017.[2]

Nor could Plaintiff plausibly and genuinely allege an actual agency between Christie's and Hackmey in 2017. Indeed, the so-called "standard consignment agreement" from Christie's that Plaintiff *sua sponte* introduced at the pre-motion stage, and Hackmey's actual Seller's PSA with Christie's (which Plaintiff also now has), confirm that Christie's agency with Hackmey ended after the sale of the Tablet closed in 2014, and that Christie's "decide[s]" post-sale rescission claims on its own. (ECF No. 33 at 3 & n.1.) *See also In re Premier Container Corp.*, 95 Misc. 2d 859, 866 (Sup. Ct., Queens Cty. 1978); *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259 (JPO), 2015 WL 374968, at *8 (S.D.N.Y. Jan. 29, 2015) ("[T]here is no plausible allegation that Wick's statements are actually chargeable to Kraft" under an agency theory of fraudulent concealment).[3]

B.   **Plaintiff's Allegations Concerning Apparent Authority Are Futile**

Plaintiff's proposed allegation that it "believed" Christie's remained Hackmey's agent in 2017, and its reliance on case law dealing with the doctrine of apparent authority, does not save its proposed SAC as against Hackmey. (ECF No. 34 at 13-17; ECF No. 34-6 ¶ 46.) For one thing,

---

[2] Plaintiff's point "that a principal may not disavow acts of an agent" is not meaningful where Plaintiff does not allege that Hackmey was, in fact, Christie's principal in 2017. (ECF No. 34 at 17 n.22.)

[3] Plaintiff's assertion that *Fertitta* "should be restricted to its own particular circumstances" is unavailing. (ECF No. 34 at 15 n.16.) The interplay between agency and equitable tolling principles discussed in that decision is apt and instructive here, and is not too "factually complex" to understand (as Plaintiff claims).

Plaintiff offers no authority that apparent authority, in the absence of any good faith basis to allege that the defendant was *actually* a principal and *actually* directed an agent to mislead a plaintiff, warrants the "sparingly" applied doctrine of equitable tolling, which looks to whether "'the defendant *actively* misled the plaintiff'". *O'Hara v. Bayliner*, 89 N.Y.2d 636, 646 (1997) (emphasis supplied). The apparent authority doctrine is inapt to the equity that Plaintiff seeks.

Even if apparent authority mattered, Plaintiff also fails to propose any allegations (let alone particularized allegations under Rule 9(b)) that would support a viable apparent authority theory. A third party seeking to invoke apparent authority must establish, *inter alia*, that "the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, …." *Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir. 1991) (citations & quotations omitted). Furthermore, the apparent authority doctrine requires a "duty of inquiry" into an agent's authority, not merely an assumption that authority exists. *Muscletech Research and Dev., Inc. v. East Cost Ingredients, LLC*, No. 00-CV-0753A(F), 2004 WL 941815, at *31-32 (W.D.N.Y. Mar. 25, 2004) (citations omitted).

Plaintiff does not propose to allege that Hackmey did anything to signal to Plaintiff in 2017 that Christie's remained his agent. Plaintiff does not propose to allege any conduct by Hackmey in 2017 at all. Plaintiff simply proposes to allege its own "understanding" in 2017, based upon its *own* beliefs concerning its post-sale cancellation rights. (ECF No. 34-6 at ¶¶ 46, 90.) That is insufficient. *See, e.g.*, *Spagnola v. Chubb*, 264 F.R.D. 76, 90-91 (S.D.N.Y. 2010) ("To adequately plead the existence of apparent authority, a plaintiff must allege 'words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction on behalf of the principal.'") (citations omitted); *Holmes v. Allstate Corp.*, No. 11 Civ. 1543 (LTS) (DCF), 2012 WL 627238, at *7-10 (S.D.N.Y. Jan. 27,

2012) ("'[T]he existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal – not the agent.'") (citations omitted).

Moreover, Plaintiff's proposed, conclusory allegations that it "reasonably believed," "understood" and "expected" that Christie's retained apparent authority from Hackmey to allegedly mislead Plaintiff in 2017 are implausible. (ECF No. 34-6 at ¶¶ 46, 90.) Plaintiff does not propose to allege that it did anything to satisfy its duty of inquiry in 2017, such that its alleged "understanding" and "expectation" of Christie's supposed ongoing agency status could be deemed reasonable. Significantly, Plaintiff elsewhere alleges its sophistication as an "active" collector and benefactor of a museum, its experience in dealing with Christie's specifically, and its admitted awareness of the "standard consignment agreement," which plainly belies any reasonable understanding that Christie's retains post-sale agency status for its consignors. (*Id.* at ¶¶ 15, 34, 52; ECF No. 30-2.) Plaintiff's apparent agency theory with respect to Hackmey is thus implausible and would be futile. *See, e.g.*, *Iqbal*, 556 U.S. at 678-79.[4]

Accordingly, where Plaintiff has not pleaded a viable basis to apply equitable tolling (even after the benefit of its own discovery), Hackmey's motion to dismiss should be granted.

## **CONCLUSION**

For the foregoing reasons, and the reasons previously submitted, defendant Joseph David Hackmey respectfully requests that the Court dismiss all of Plaintiff's claims as against him with

---

[4] Plaintiff's assertion that "it had no knowledge of the actual authority vested in Christie's to act on Hackmey's behalf post-sale" is disingenuous, particularly in the face of Plaintiff's admitted awareness of Christie's so-called "standard consignment agreement" terms and conditions. (ECF No. 34 at 15 n.17.) Plaintiff's assertion that its PSA "expressly conferred a post-sale cancellation right upon Hobby Lobby that would *require* Christie's to continue to act as Hackmey's agent to address on his behalf," is equally implausible. (ECF No. 34 at 14 n.15 (emphasis supplied).) Plaintiff's invented "requirement" of ongoing agency is conclusively belied by the clear and unambiguous terms of the "standard consignment agreement" (which Plaintiff introduced to the Court), as well as the terms of the actual Seller's PSA between Hackmey and Christie's, which, as Plaintiff knows, specifically provides for Christie's agency to have terminated when the Tablet's sale closed in July 2014. (ECF No. 30-2; ECF No. 33 at 7.)

prejudice, and that the Court award Hackmey such other and further relief as deemed just and proper.

Dated: New York, New York
      June 23, 2021                         PRYOR CASHMAN LLP

By: _____
    William L. Charron
    wcharron@pryorcashman.com
    Haley C. Sylvester
    hsylvester@pryorcashman.com
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant Joseph David Hackmey*